[Cite as *State v. Pratt*, 2018-Ohio-1394.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105791**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RAHKEBA PRATT

DEFENDANT-APPELLANT

### JUDGMENT:
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-613197-A

**BEFORE:** E.T. Gallagher, J., Kilbane, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** April 12, 2018

**ATTORNEYS FOR APPELLANT**

Mark Stanton
Cuyahoga County Public Defender

BY:   Paul Kuzmins
Assistant Public Defender
Courthouse Square, Suite 200
310 Lakeside Avenue
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:   Ronni Ducoff
       Mary M. Frey
       Sean Kilbane
Assistant Prosecuting Attorneys
The Justice Center, 8th and 9th Floors
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

**{¶1}** Defendant-appellant, Rahkeba Pratt ("Pratt"), appeals her sentence and claims the following two errors:

> 1. The trial court erred in ordering [Pratt] to serve the maximum 180 days in jail followed by five years of community control supervision on the same count for both Counts 1 and 2 of the indictment.
>
> 2. The trial court erred in ordering [Pratt] to serve the maximum sentence where her conduct did not amount to the worst form of the offense and she did not have any prior criminal history.

**{¶2}** We find merit to the appeal, reverse the trial court's judgment, and remand the case to the trial court for resentencing.

## I. Facts and Procedural History

**{¶3}** Pratt pleaded guilty to two counts of misdemeanor child endangering after her live-in boyfriend was charged with sexually assaulting her two daughters, R.W. I and R.W. II. The indictment alleged that Pratt's boyfriend, Michael Bell ("Bell"), continually molested the children from August 1, 2015, through June 13, 2016.

**{¶4}** In August 2015, Pratt, Bell, and Pratt's two children were living on East 90th Street in Cleveland when Pratt 's oldest daughter, R.W. II, told her that Bell touched her inappropriately. Pratt confronted Bell about the accusation, and Bell denied any inappropriate touching. He claimed he innocently touched R.W. II while he was looking for bed bugs. The apartment was infested with bed bugs, and Pratt concluded that R.W. II mistook Bell's innocent behavior for something more sinister. However, the parties

later moved to Tacoma Avenue in Cleveland where R.W. II again told her mother that Bell touched her inappropriately. This time, Pratt instructed R.W. II not to tell anyone "because we need a place to stay."

{¶5} Sometime later, R.W. II was caught stealing money from her maternal aunt. When R.W. II's aunt questioned her about the theft, R.W. II told her aunt about the abuse and that her mother told her not to tell anyone because they needed a place to stay. R.W. II thought the money might help her mother and improve the situation.

{¶6} R.W. II's aunt reported the abuse to the police. The police transported Pratt and her daughters to the emergency room at University Hospitals for a sexual assault evaluation. According to the police report, R.W. II told Pratt during the drive to the hospital "that I have been trying to tell you this mom, but you wouldn't listen." However, no physical examination was done at the hospital because there had been no physical abuse in the last 72 hours. The emergency room personnel referred Pratt to the Care Clinic at University Hospitals, which provides services to children suspected of being sexually abused. Although Pratt received a packet of information regarding the Care Clinic's services and its address and telephone number, Pratt never took the children to the Care Clinic.

{¶7} Pratt was arrested one month after the abuse was reported to police, and the children moved in with their maternal grandmother ("Grandmother"). Grandmother took R.W. I to the hospital because she was showing signs of a urinary tract infection. R.W. I, who was eight years old, was subsequently diagnosed with trichomonas, a sexually

transmitted disease. Grandmother informed the court at sentencing that the children were both in counseling through the Rape Crisis Center to sort out the trauma they endured as a result of Bell's actions and the lack of trust they experienced from their mother, who failed to protect them after she learned of the abuse.

{¶8} The trial court sentenced Pratt to 180 days in jail on each count of child endangering and ordered the jail terms to be served concurrently, followed by a period of community control on each count.[1] Pratt now appeals her sentence.

## II. Law and Analysis

{¶9} In the first assignment of error, Pratt argues the trial court erred in ordering her to serve 180 days in jail followed by a period of community control supervision. She contends this sort of hybrid sentence that combines a maximum term of incarceration with a period of community control is contrary to law and that the court should have suspended the jail sentence. She cites *State v. Aziz-Hakim*, 8th Dist. Cuyahoga No. 98176, 2012-Ohio-5890, to support her argument.

{¶10} Aziz-Hakim was sentenced to 180 days in jail. In addition to the maximum jail term provided by law, the sentencing entry stated that Aziz-Hakim was "Banned from Walmart" because Aziz-Hakim committed his crimes at Walmart. *Id*. at ¶ 17. On appeal, Aziz-Hakim argued that "while the court could ban him from the store as a condition of community control, it could not impose community control where the court

---

[1] The trial court sentenced Pratt to five years of community control sanctions on the record at the sentencing hearing. However, the sentencing entry states that Pratt was sentenced to two years of community control sanctions.

imposed the maximum jail term for a first-degree misdemeanor with no part of that sentence suspended." *Id.* This court agreed and remanded the case to the trial court to vacate Aziz-Hakim's sentence. *Id.* at ¶ 17.

{¶11} R.C. 2929.25(A)(1) supports the court's conclusion in *Aziz-Hakim.* R.C. 2929.25(A)(1) authorizes hybrid sentences composed of a jail term followed by a period of community control sanctions, but only if the trial court suspends "all or a portion of the jail term imposed." R.C. 2929.25(A)(1)(b). In other words, a trial court may not require a defendant to serve a period of community supervision after serving the maximum jail sentence for a misdemeanor.

{¶12} The trial court in this case ordered Pratt to serve the maximum jail term of 180 days on each of her child endangering convictions followed by a period of community control sanctions, to be served concurrently. Because the trial court did not suspend all or a portion of the jail terms imposed, the sentences are contrary to law.

{¶13} Accordingly, the first assignment of error is sustained.

{¶14} Having determined that Pratt's concurrent sentences are contrary to law, the second assignment of error, which concerns the propriety of the court's decision to impose maximum jail terms, is moot.

{¶15} Judgment reversed and case remanded to the trial court for resentencing on both counts of child endangering.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR